1
2
3
4
5                    **UNITED STATES DISTRICT COURT**

6                          **DISTRICT OF NEVADA**

7  UNITED STATES OF AMERICA,                )
                                            )        Case No. 2:10-cr-00217-PMP-PAL
8                           Plaintiff,       )
                                            )        **REPORT OF FINDINGS AND**
9  vs.                                       )        **RECOMMENDATION**
                                            )
10 DRAGOMIR TASKOV,                          )        (Mtn to Suppress - Dkt. #100)
                                            )
11                          Defendant.       )
   ─────────────────────────────────────── )
12

13        This matter is before the court on Defendant Dragomir Taskov's Motion to Suppress (Dkt.

14 #100).  The government filed a Response (Dkt. #112) to which Taskov replied (Dkt. #115).  The court

15 has considered the Motion, the Response, and the Reply.

16                              **BACKGROUND**

17        Taskov was charged in an Indictment (Dkt. #1) on May 18, 2010, with thirty-two counts,

18 including conspiracy, in violation of 18 U.S.C. § 371; wire fraud, in violation of 18 U.S.C. §1343;

19 interstate transportation of stolen property, in violation of 18 U.S.C. § 2514; receipt of stolen property,

20 in violation of 18 U.S.C. § 2514, and aiding and abetting, in violation of 18 U.S.C. § 2.  Taskov is

21 joined for trial with his co-defendants Dimitar Dimitrov, Boyan Gierorguiev, Rossen Daskalov, Yuliyan

22 Milushev, and Nikolay Mladenov.  On May 24, 2011, the grand jury returned a Superceding Indictment

23 (Dkt. #119), which did not substantively alter the nature of the charges against Taskov and his co-

24 Defendants.

25 **I.      The Parties' Positions.**

26        **A.      Motion to Suppress (Dkt. #100).**

27        Taskov asserts that police and federal agents engaged in extensive Title III wiretapping of him

28 and others for nearly two years and conducted many hours of video surveillance of his residence

at 2742 Rosanna Street, Las Vegas, Nevada.  On June 12, 2008, Taskov made admissions to law enforcement officers when confronted with intelligence gleaned from the surveillance.  He did not consult with an attorney prior to making the admissions, and he contends his incriminating admissions were not knowing, voluntary, or intelligent.  Taskov requests the court hold an evidentiary hearing to show that he was intimidated into responding to agents without counsel present.

Taskov also argues that the electronic and visual surveillance of him was excessive and violated his Fourth Amendment rights.  Although the Title III surveillance was authorized by court orders, he maintains that the affidavits supporting the applications were defective because the government did not exhaust ordinary investigative techniques prior to engaging in the Title III surveillance pursuant to 18 U.S.C. § 2518(1)(c). Taskov also claims the government did not minimize electronic interception as required by 18 U.S.C. § 2518(5).  Instead, the government listened to hundreds of hours of recordings, including hundreds of innocuous conversations.  To support this contention, Taskov attaches innocuous transcribed conversations he obtained in discovery which having nothing to do with any criminal activity as Exhibit A to the Motion to Suppress.  Taskov admits that contemporaneous minimization is not required in cases involving foreign languages, but asserts no strict procedures were implemented to minimize the interceptions after the fact.

Taskov also alleges that the government did not make an adequate showing in the applications for the Title III orders that it attempted ordinary investigative techniques as required by 18 U.S.C. § 2518(1)(c).  Specifically, the government's affidavits were not specific enough because they were based upon an informant's information whose "reliability may be suspect."  Although Taskov admits the affidavits state that usual investigative procedures would be too dangerous, he argues that any such danger is a "wonderful legal fiction" designed to cure any flaws in an otherwise insufficient affidavits. Because of the government's failure to minimize and the insufficient affidavits, Taskov contends all the Title III evidence, including derivative evidence, must be suppressed.

**B.** **Government's Response (Dkt. #112).**

First, the government notes that it has no record of Taskov making any substantive statement to law enforcement officers on June 12, 2008–the date Taskov was arrested on Nevada state charges of automobile loan fraud.  The government did not begin using court-authorized electronic surveillance

1  until July 27, 2009.  As a result, any statements made on June 12, 2008, were not the result of

2  surveillance conducted by the government.  The government admits that when Taskov was arrested on

3  May 19, 2010, on the instant federal charges, he waived his *Miranda* rights and was interviewed by law

4  enforcement officers.  The government has not determined whether it will seek to introduce any

5  statements made during that interview at trial.

6        The government asserts that the affidavits submitted in support of the Title III applications met

7  the necessity requirement of 18 U.S.C. § 2518(1)(c) and details the development of the investigation

8  prior to the government's seeking an electronic surveillance order.  With regard to the applications

9  related to Taskov's alleged automobile loan fraud conspiracy, the affidavits explained that the

10 government began its investigation in early 2008.  On June 12, 2008, a Nevada state search warrant was

11 executed at Taskov's residence, resulting in the seizure of cars and documents allegedly related to

12 automobile loan fraud.  A confidential informant was developed, and consensual recordings were made

13 of Taskov and his co-Defendants.  In September 2008, a pen register was put on Taskov's telephone.

14 The affidavits submitted in support of the Title III wiretaps outlines why the continued use of normal

15 investigative techniques would be unsuccessful in developing a case against the Defendants.

16       With regard to Taskov's minimization argument, the government notes that the conversations

17 attached to the Motion to Suppress (Dkt. #100) are not conversations intercepted pursuant to a Title III

18 order.  Rather, they are consensually-recorded conversations by a confidential informant.  The

19 government asserts Taskov has not provided any example of improper minimization of court-authorized

20 electronic surveillance and that it has made a *prima facie* showing of compliance with the minimization

21 requirement.  In order to ensure proper minimization, monitoring agents were instructed on the

22 requirements and need for minimization and were required to read the minimization guidelines.

23 Supervising agents were either in the monitoring room or available by cell phone, and an Assistant

24 United States Attorney was on call to answer any minimization questions.

25       Furthermore, because the majority of intercepted calls were in Bulgarian, the government

26 adopted reasonable post-minimization procedures.  The government engaged the services of one or two

27 translators, and when they were available, they acted as real time monitors for the surveillance and were

28 instructed on the minimization guidelines and told to minimize intercepted calls in real time.  The

1   government concedes that the extent of electronic surveillance conducted and the unavailability of

2   Bulgarian experts required use of the translators primarily for post-minimization.  When non-Bulgarian

3   speakers intercepted the communications, they recorded the entire intercepted conversations, and the

4   communications were later provided to the translators for review.  The translators then determined

5   whether the communications were pertinent or non-pertinent.  Non-pertinent communications were

6   minimized and not further reviewed or disseminated.

7          The government contends that over eighty-four percent of the monitored communications were

8   minimized in real time or minimized during the translation process after the fact.  Because Taskov does

9   not assert that agents failed to minimize in real time or disseminated any non-pertinent conversations

10  after minimization, he has not established the government's minimization efforts were unreasonable.

11         **C.  Taskov's Reply (Dkt. #115).**

12         Taskov asserts that an evidentiary hearing will show that the government did not properly

13  minimize over 97.5 percent of the hours of conversation it seized during its investigation.  Taskov

14  contends the government should have minimized in real time, but chose the lower-cost option of post-

15  minimization despite the government's awareness that this case involved Bulgarian nationals.

16  **II.   Legal Authority & Analysis.**

17         **A.      Request for an Evidentiary Hearing.**

18         Taskov requests an evidentiary hearing to show "that the government did not minimize over

19  97.5% of the hours of conversation it seized during the investigation."  The Ninth Circuit has held that

20  an evidentiary hearing on a motion to suppress need only be held if the moving papers allege facts with

21  sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of

22  material fact exist.  *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (*citing United States v.

23  Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990);

24  *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704,

25  706 (9th Cir. 1972) ("Evidentiary hearings need be held only when the moving papers allege facts with

26  sufficient definiteness, clarity, and specificity to enable the trial court to conclude that relief must be

27  granted if the facts alleged are proved.")).  "A hearing will not be held on a defendant's pre-trial motion

28  to suppress merely because a defendant wants one.  Rather, the defendant must demonstrate that a

1  'significant disputed factual issue' exists such that a hearing is required." *Howell*, 231 F.3d at 621

2  (*citing Harris*, 914 F.2d at 933). The determination of whether an evidentiary hearing is appropriate

3  rests in the reasoned discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th

4  Cir.), *amended by* 609 F.2d 433 (1979). Here, Taskov has made only an unsupported, conclusory

5  statement in support of his request for an evidentiary hearing, and the court concludes there are no

6  contested issues of fact that require an evidentiary hearing in this matter. The court will therefore

7  decide the motion on the moving and responsive papers.

8        **B.**    **Taskov's June 12, 2008 Statements.**

9       Taskov seeks to suppress any statements he made to law enforcement officers after his arrest on

10  June 12, 2008, on the grounds that when confronted with information gleaned from surveillance,

11  Taskov was "unable to resist interrogation." He asserts his incriminating admissions were not knowing,

12  voluntary, or made with intelligent awareness of his rights because he was confronted with evidence

13  gleaned from wiretap surveillance. However, the government did not begin the use of court-authorized

14  electronic surveillance until July 27, 2009–nearly thirteen months later. Taskov was arrested on federal

15  charges on May 19, 2010, waived his *Miranda* rights, and was interviewed by law enforcement officers.

16  However, the government has not decided whether it will seek to use any portion of this interview at

17  Taskov's trial.

18       The government has the burden of proving, by a preponderance of the evidence, whether a

19  confession is voluntary. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). In order for any statement to be

20  admissible against a defendant at trial, it must be voluntarily made. The Ninth Circuit has held that a

21  voluntary statement is "one that is the product of a rational intellect and free will." *United States v.*

22  *Kelley*, 953 F.2d 562, 564 (9th Cir. 1992) (*citing Blackburn v. Alabama*, 361 U.S. 199, 208 (1960)). In

23  examining the voluntariness of a statement, the court must consider "whether, under the totality of the

24  circumstances, the challenged confession was obtained in a manner compatible with the requirements

25  of the Constitution." *Derrick v. Peterson*, 924 F.2d 813, 817 (9th Cir. 1991). In addition, the Supreme

26  Court has determined that coercive police activity is a necessary predicate to a finding that a confession

27  is not voluntary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). It is the government's burden to

28  prove that a confession was voluntary by a preponderance of the evidence. *United States v. Jenkins*,

1 | 958 F.2d 934, 937 (9th Cir. 1991) (*citing Lego v. Twomey*, 404 U.S. 477, 489 (1972)); *see also*

2 | *Connelly*, 479 U.S. at 168.

3 |      The court must examine the totality of the circumstances and "determine whether 'the

4 | government obtained the statement by physical or psychological coercion or by improper inducement so

5 | that the suspect's will was overborne.'" *United States v. Harrison*, 34 F.3d 886, 890 (9th 1994)

6 | (*quoting United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988)).  The court should

7 | consider the characteristics of the accused and the details of the interrogation. *Kelley*, 953 F.2d at 565

8 | (*citing Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).  The personal characteristics of the

9 | accused are "constitutionally irrelevant absent proof of [police] coercion." *Derrick*, 924 F.2d at 818

10 | (*quoting United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987) (citations omitted)).  A

11 | statement that is the product of a rational intellect and free will is voluntary, "whether [or not] a

12 | confession is the product of physical intimidation or psychological pressure [or] a drug-[alcohol-]

13 | induced statement." *Medeiros v. Shimoda*, 889 F.2d 819, 823 (9th Cir. 1989) (*citing Townsend v. Sain*,

14 | 372 U.S. 293, 307 (1963)).

15 |      Here, the government has no record of any statement Taskov made to law enforcement officers

16 | on June 12, 2008, thirteen months prior to the initiation of the Title III wiretaps in this case.  It has not

17 | determined whether it will use any portion of Taskov's interview with law enforcement on May 19,

18 | 2010.  A ruling on the admissibility of Taskov's statements should be deferred until trial.  If the

19 | government seeks to introduce evidence of any inculpatory statements Taskov made at the time of his

20 | arrest, it will be required to meet its burden of establishing by a preponderance of the evidence that the

21 | statements were voluntary.

22 |     **C.**    **Title III Wiretap Applications.**

23 |      Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351**,**

24 | 82 Stat. 212 (codified at 18 U.S.C. §§ 2510-14, 2516-18, 2519, 2520, 2521-22 (2000)) ("Title III"),

25 | regulates the interception of wire, oral, and electronic communications.  It identifies the procedures law

26 | enforcement officials must follow to conduct electronic surveillance and requires judicial authorization

27 | for interception of wire, oral, or electronic communications in connection with the investigation of

28 | certain enumerated crimes. *See* 18 U.S.C. § 2516.  As a general matter, Title III prohibits electronic

surveillance by the federal government except under carefully defined circumstances.  *See United States v. Blackmon,* 273 F.3d 1204, 1207 (9th Cir. 2001).  The procedural steps provided by Title III require "strict adherence."  *Id.* (*citing United States v. Kalustian*, 529 F.2d 585 (9th Cir. 1976) (internal citation omitted)).

Title III provides that any "aggrieved person" defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed" may move to suppress the contents of intercepted oral and wire communications, or evidence derived therefrom in violation of the statute.  Section 2518(10)(a) provides for suppression of intercepted communications and derivative evidence if:

> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a).

### 1.    Necessity of the Wiretap, 18 U.S.C. § 2518(1)(c).

Taskov challenges the applications for the Title III orders on the basis that the government failed to make an adequate showing of necessity under 18 U.S.C. § 2518(1)(c). That section requires the government to include, in each application for an order under Title III, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  *Id.*  Section 2518(3)(c) further provides that a judge may approve a wiretap application if he or she "determines on the basis of the facts submitted . . . that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous."  *Id.*  The necessity requirement exists "in order to limit the use of wiretaps, which are highly intrusive."  *Blackmon*, 273 F.3d at 1207 (*citing United States v. Bennett*, 219 F.3d 1117, 1121 (9th Cir. 2000) (internal citation omitted)).  Sections 2518(1)(c) and 2518(c)(3) ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.  *Id.* (*citing United States v. Kahn*, 415 U.S.

7

143, 153 at n.12 (1974)). The court reviews the issuing judge's conclusion that the wiretap was

necessary for abuse of discretion. *See United States v. Rivera,* 527 F.3d 891, 898 (9th Cir. 2008) (*citing*

*United States v. Lynch*, 437 F.3d 902, 912 (9th Cir. 2006) (en banc)).

An affidavit contains a full and complete statement of facts in compliance with § 2518(1)(c) if it

attests that adequate investigative techniques were exhausted before the wiretap order was sought or

that such methods reasonably appeared unlikely to succeed or were too dangerous. *United States v.*

*Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005). Taskov states that the necessity requirement is

unsatisfied because the affidavits were not specific enough and were based upon informants whose

"reliability may be suspect." Other than these conclusory allegations, he does not identify any

particular deficiency in the affidavits. Having reviewed the applications, the court finds that the

government satisfied the necessity requirement of section 2518(1)(c). In each affidavit, the government

provided a detailed outline of the investigation's background and enumerated why the possible use of

confidential informants, undercover agents, physical surveillance, pen registers, grand jury

investigation, victim interviews and target interviews had been or would be insufficient in this case.

*See, e,g.,* Exhibit A1 at 47-54, A2 at 33-41, A3 at 33-40, A4 at 44-55, B1 at 56-63, B2 at 89-100, B3 at

74-89, B4 at 49-62, B5 at 42-55, B6 at 38-54, C1 at 39-46, C2 at 43-51, C3 at 39-51, D1 at 48-58.

For example, the affidavit of Task Force Officer Bradley Cupp in support of one of the Title III

applications attached as Exhibit A1 to the government's Response provides a detailed background of

the investigation. Officer Cupp attests that Taskov is believed to be part of an organized crime

syndicate of Bulgarian nationals. Investigation by Las Vegas Metropolitan Police Department, the

Phoenix Police Department, and the Las Vegas Division of the Federal Bureau of Investigation revealed

the organization's involvement in a variety of criminal activity, including fraudulently obtaining

vehicles and selling them to third parties in the United States, smuggling vehicles to Eastern Europe by

way of Canada, access device fraud involving Automatic Teller Machines, narcotics trafficking, and

counterfeiting currency. The affidavit details the manner and method of the various criminal schemes

based upon law enforcement's investigation. Officer Cupp avers that the wiretaps sought in the

application would assist law enforcement in defining the full scope of the criminal activities, identifying

the members of the organization, and the places and methods of operation of the organization.

8

1    The affidavit also includes a section detailing the necessity of a Title III wiretap.  Specifically,

2    Officer Cupp attests that using confidential sources would be insufficient in this case because of the

3    large, highly compartmentalized, and geographically diverse nature of the alleged criminal organization.

4    He further avers that Taskov surrounds himself with only close family and friends, and confidential

5    sources have been unable to be accepted into the organization.  An undercover agent would be unable to

6    infiltrate the organization as well because no investigator speaks Bulgarian well enough.  Even if they

7    could, merely targeting Taskov would not dismantle the smuggling organization because the undercover

8    agent would not likely meet with higher members of the organization nor would the agent be involved

9    in the inner workings of the conspiracy.  Furthermore, interviewing lower-level members of the

10   organization would not be productive because these members fear for their physical safety or are

11   culpable themselves.  It asserts that grand jury subpoenas are impractical because all of the members of

12   the organization have not yet been identified.  Furthermore, those who have been identified would not

13   cooperate with the grand jury.  Search warrants, too, would not be useful because service of such

14   warrants would alert other members of the organization to law enforcement's investigation.  Moreover,

15   relevant documents would likely be written either in Bulgarian, code, or both and would fail to

16   substantiate the scope of the criminal enterprise.  The use of pen registers would be ineffective to

17   provide law enforcement with the necessary evidence to sustain prosecution, to determine the identities

18   of any co-conspirators, or define the scope of the conspiracy.  Physical surveillance had been

19   accomplished with some success, but Cupp explained that due to the national and international reach of

20   the organization, surveillance is too cost and resource prohibitive to be effective.  Consensual

21   recordings were useful to limited extent because undercover agents or confidential sources were not in

22   contact with Taskov enough to obtain information about every pertinent conversation Taskov had with

23   other co-conspirators.

24   As detailed above, the affidavits here do more than merely recite the inherent limitations of

25   using alternative methods; they explain in reasonably detailed fashion why such alternative methods are

26   unlikely to succeed in achieving the goals of the investigation.  The Ninth Circuit has found such

27   explanations sufficient to satisfy the necessity requirement.  *See Rivera*, 527 F.3d at 899.  Moreover, the

28   Ninth Circuit has recognized that "[a]lthough a wiretap should not be used routinely as the first step in a

1   criminal investigation, it need not be the last resort." *United States v. Smith*, 839 F.2d 1573, 1582 (9th

2   Cir. 1990) (*citing United States v. Bailey,* 607 F.2d 237, 241 (9th Cir. 1979), *cert. denied,* 445 U.S. 934

3   (1980)).

4       To the extent Taskov argues the government's affidavits are form documents that employ

5   boilerplate language, the Ninth Circuit has found that the use of standard language does not

6   automatically negate a finding of necessity. *United States v. Fernandez*, 388 F.3d 1199, 1237 (9th Cir.

7   2004) (concluding that wiretap application satisfied necessity requirement despite its inclusion of

8   statements that merely described inherent limitations of traditional investigative techniques); *United*

9   *States v. Torres,* 908 F.2d 1417, 1423 (9th Cir. 1990) ("The presence of conclusory language in the

10  affidavit will not negate a finding of necessity if the affidavit, as a whole, alleges sufficient facts

11  demonstrating necessity"); *but see Blackmon*, 273 F.3d at 1208 (suppressing evidence in part because

12  wiretap application contained *only* generalized statements true of any narcotics investigation and

13  because the affidavits contained material misrepresentations and omissions).

14              **2.       Minimization of the Wiretaps, 18 U.S.C. § 2518(5).**

15      Taskov also challenges the government's use of electronic surveillance pursuant to Title III on

16  the ground that the government failed to minimize the non-pertinent conversations that were recorded.

17  Title III requires that wiretapping "be conducted in such a way as to minimize the interception of

18  communications not otherwise subject to interception." 18 U.S.C. § 2518(5). The Ninth Circuit has

19  held that minimization requires that "the government adopt reasonable measures to reduce to a practical

20  minimum the interception of conversations unrelated to criminal activity under investigation while

21  permitting the government to pursue legitimate investigation." *United States v. McGuire,* 307 F.3d

22  1192, 1199 (9th Cir. 2002). The minimization techniques used "do not need to be optimal, only

23  reasonable." *Id.* at 1202; *Torres*, 908 F.2d at 1423 (*citing United States v. Abascal,* 564 F.2d 821, 827

24  (9th Cir. 1977), *cert. denied,* 435 U.S. 953 (1978)). A court should look to the facts and circumstances

25  of each case in determining whether the government has conducted a wiretap in compliance with the

26  statutory minimization requirements. *See Rivera,* 527 F.3d at 604 (*citing Scott v. United States*, 436

27  U.S. 128, 140 (1978)). The government has the burden to show proper minimization, but where a

28  defendant does not challenge the admission of any particular intercepted conversation, the court need

10

1    only determine whether the government has made a *prima facie* case of compliance with the

2    minimization requirements.  *See Torres,* 908 F.2d at 1423 (*citing United States v. Turner*, 528 F.2d 143,

3    157 (9th Cir. 1975), *cert. denied,* 423 U.S. 996 (1976)).

4         Here, the government asserts, and Taskov does not dispute, that the conversations attached to

5    the Motion to Suppress were consensually-recorded conversations by a confidential informant and were

6    not recorded pursuant to any Title III order.  These conversations were not required to be minimized.

7    Taskov has not challenged any particular recorded conversation as improperly minimized.  Thus, the

8    government need only show a *prima facie* case of compliance with the minimization requirements.  The

9    affidavits submitted to the court contain detailed minimization provisions which provide that all

10   interceptors of conversation pursuant to the Title III order would be instructed concerning minimization

11   and required to read the minimization guidelines, the affidavits, and the court's Orders authorizing the

12   wiretaps.  The government represents that supervising agents were present in the monitoring room

13   during interception or were available by cell phone, and that an Assistant United States Attorney was on

14   call to answer any minimization-related questions.

15        Because the bulk of the intercepted communications were in Bulgarian, the government also

16   adopted post-minimization procedures which provide that to the extent a Bulgarian speaker was

17   unavailable during the interception, minimization would be accomplished as soon as practicable.

18   Section 2518(5) explicitly provides that "[i]n the event the intercepted communication is in a code or

19   foreign language, and an expert in that foreign language or code is not reasonably available during the

20   interception period, minimization may be accomplished as soon as practicable after such interception."

21   *Id.*[1]  Here, the government represents that when Bulgarian translators were available, they were

22   instructed on the minimization guidelines and minimized the interceptions in real time.  The

23   government also represents that when the translators were not available for real-time monitoring, and a

24   conversation in Bulgarian was intercepted, the whole conversation was recorded, and the translators

25

26        [1]Taskov's reliance on *People v. Brenes*, 364 N.E.2d 1322 (N.Y. 1977), is misplaced.  That case
     held that automatic or continuous recordings are rarely reasonable.  However, it was decided prior to the
27   1986 amendment to 18 U.S.C. § 2815, which allowed post-minimization where intercepted
     conversations are in a foreign language.
28

reviewed the conversations after the fact.  Non-pertinent communications were then minimized and were not further reviewed or disseminated.  Finally, the government represents it minimized over eighty-four percent of the intercepted conversations in real time or after the fact.  Taskov does not challenge any particular conversation as improperly minimized.  The court finds the government had reasonable real-time and post-minimization procedures in place, and the government has made a *prima facie* showing of compliance with 18 U.S.C. § 2815.

For all the foregoing reasons,

**IT IS RECOMMENDED** that Taskov's Motion to Suppress (Dkt. #100) be DENIED.

Dated this 15th day of June, 2011.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

12